Craig Cox Harvey County Counselor Courthouse P.O. Box 687 Newton, Kansas 67114-0687
Dear Mr. Cox:
As Harvey county counselor you request our opinion on whether K.S.A. 1994 Supp. 12-5305, 12-5306 and 12-5307 impose upon a county or city the duty to pay for telephone lines from the local cellular tower to the local public service answering point (PSAP).
The statutes in question state in pertinent part:
 "A wireless service supplier shall receive prior approval of the PSAP of that jurisdiction before directing emergency calls to such a PSAP." K.S.A. 1994 Supp. 12-5305.
 "On or before December 31, 1995, every wireless service supplier shall establish the unique emergency telephone number `911' across the state, excluding the Kansas Turnpike Assistance telephone number." K.S.A. 1994 Supp. 12-5306.
 "On or before December 31, 1995 the governing body of each city and county shall provide for or contract for the 24-hour receipt of wireless emergency calls for all wireless service areas within the jurisdiction of the city or county." K.S.A. 1994 Supp. 12-5307 (emphasis added).
In addition to the statutes you cite, K.S.A. 1994 Supp. 12-5302
also addresses wireless services in subsection (e):
 "Every billed service user shall be liable for any tax imposed under this act until it has been paid to the service supplier. Wireless service users shall be exempt from the emergency telephone tax." (Emphasis added).
K.S.A. 1994 Supp. 12-5301 contains some relevant definitions:
 "(h) `service supplier' means any person providing exchange telephone services to any service user in this state.;
 "(i) `service user' means any person who is provided exchange telephone service in this state;
 "(j) `wireless carrier' means any common, private or other radio carrier licensed by the federal communications commission to provide two-way voice or text radio service in this state which provides interconnection to the public switched telephone network and access to a 24-hour answering point;
 "(k) `wireless service' means a two-way voice or text radio service provided by a wireless carrier; and
"(l) `PSAP' means public safety answering point."
The actual call in question occurs when a service supplier who provides a 24 hour answering point receives a cellular call at a tower. The service provider forwards that call (through installed telephone lines) to the designated PSAP for the area. The PSAP may receive such calls on a specially dedicated line. The county or city accepts the calls at the designated PSAP and takes whatever action is necessary to respond to the call in question.
Which entity must pay for the cost of installing the phone lines from the tower to the PSAP appears to be the issue. As stated in K.S.A. 1994 Supp. 12-5302(b), "[t]he proceeds of the tax shall be utilized to pay for the operation of emergency telephone services as set forth in subsection (h) of K.S.A. 12-5304, and amendments thereto. . . ." It has been the opinion of this office that such tax generated revenues may only be used for purposes directly connected with operation of the emergency telephone service. See
Attorney General Opinions No. 90-87, 92-144, 92-36, 92-98 and93-6. According to these opinions, operational costs may include equipment used to receive and record emergency calls and equipment used to relay or dispatch emergency information to response units.
Attorney General Opinion No. 90-87 recognized that a county could expend tax money generated under the act for payment of phone lines and hardware. However, K.S.A. 1994 Supp. 12-5302(e) specifically exempts cellular phone service users from the tax ordinarily assessed to pay for the costs of providing 911 service in an area. The cited Attorney General opinions predate enactment of the recent statutes concerning cellular phone services and PSAPs.
The issue of responsibility for the specific cost of installing new phone lines is not clearly addressed within the act in question. Statutory construction rules dictate that, when an issue arises and the legislation is not clear on its face, legislative history may be consulted for clarification. We have reviewed the testimony provided to the legislature in connection with 1994 house bill no. 2794, 1994 senate bill no. 645 and that 1994 senate bill no. 688. (Note: the 1994 enactments discussed herein were eventually enacted as part of 1994 house bill no. 3055). We have not located any testimony or legislative comment which spoke directly to or would support absolutely requiring local units of government to pay for the costs of phone lines for wireless service. Nor was there legislative history evidencing an intent to prohibit such a use of public funds. Much of the testimony provided to legislators by local units of government supported an additional tax upon cellular phone users. This additional tax provision failed. Nevertheless proponents of the additional tax argued for it on the basis that it was needed to help fund operation of 911 services.
K.S.A. 12-5307 states that the county or city "shall provide for or contract for the 24-hour receipt of wireless emergency calls for all wireless service areas with the jurisdiction of the city or county." Thus, the county or city is under some obligation toreceive cellular 911 calls. K.S.A. 1994 Supp. 12-5305 requires service suppliers of wireless phones to provide for receipt of cellular 911 calls and then refer them to the proper authorities. What actions and costs are necessary to provide or contract for such receipt and referral appears to be a question of fact, which must be answered on a case by case basis. When read together, the two statutes allow the fiscal burden of providing phone lines to fall upon either the service supplier or the city or county.
There is no statute that absolutely obligates a city or county to pay for phone lines from a cellular phone tower to a local PSAP. The obligation to pay for certain cellular phone related costs does not appear to arise under the act in question, but rather, may simply be part of the normal service supplier/service user agreement and arrangement. If a city or county cannot otherwise provide for receipt of such a service, or if it wishes to contractually agree to pay for the costs in question, it appears that it has the authority to do so. However, we do not believe that the payment for such lines or other costs is statutorily imposed upon counties or cities.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Theresa Marcel Nuckolls Assistant Attorney General
CJS:JLM:TMN:jm